[NOVEMBER TERM, 1798.]

## DEN *ex dem.* LOCKYER *against* DE HART.

A voluntary conveyance from a father to his children, without any other consideration than natural affection, made at the time he is indebted, is fraudulent, as against creditors.

A *cognovit actionem*, by executor, is an admission of assets.

This was an ejectment for lands in the county of Essex. At the trial of the cause at the *Nisi Prius* in April, 1798, before *Kirkpatrick* and *Boudinot*, justices, it appeared, that the plaintiff claimed under a deed from Robert Little to his daughter Phœbe Lockyer, for her life remainder in fee to her three children. This deed was dated January 14, 1761. All the children of P. Lockyer, the grantee for life, are dead without issue, excepting Samuel Lockyer, the lessor of the plaintiff.

It appeared in evidence that John Lockyer, the husband of Phœbe, his wife and family, lived upon the land in question from the death of Little, for nine or ten years, without any interruption ; at that time, however, the defendant

obtained possession, which he had kept ever since. Some of the witnesses swore that even prior to Little's death, the land was generally considered as belonging to Phœbe Lockyer; but her husband being (after a release was executed) admitted as a witness, swore that at the time of the deed being made to his wife and children he was totally ignorant of the circumstance. One or two of the witnesses swore that Little was generally believed to be in good circumstances.

The defendant proved that about two months previous to the execution of the deed from Little to his daughter and grandchildren, a cause of action accrued against him on a warranty deed; this was the foundation of a suit, in which the executor of Little confessed judgment by *cognovit actionem* to Mathias Halsted, some time in the year 1763. Under that judgment, the lands in question were taken in execution, and sold by the sheriff to Halsted; but the deed from Hampton, the sheriff, to Halsted, was not executed until March 25, 1772, a short time, however, previous to which he had acquired possession. Halsted conveyed July 12, 1790, to the defendant, for the consideration of £85.

After argument, the court charged the jury—that the question depended entirely upon the validity of the deed from Little to his daughter and grandchildren, in January, 1761. They were to consider whether this was a fair and *bona fide* transaction, or whether its object was fraudulent, to prevent those who had legal claims upon his estate from obtaining justice? This, the court said, was in a measure a question of fact, for the consideration of the jury. The law, however, has established some general rules by which the jury are to measure the circumstances of the case.

1. It is not a sufficient ground to pronounce a deed fraudulent, that it is voluntary. It is perfectly fair and honorable for a man to make such a disposition of his property in favor of the different members of his family, when by so doing he works no injury to others.

2. But if a man, with a view to defraud a third person of a just debt, or of the benefit of his contract or covenant, shall make a conveyance of his land to his children, that it may not be liable to these demands upon it, such a transaction is fraudulent and invalid.

3. The policy of the law has carried these provisions in favor of honesty and in discouragement of fraud, still further, and holds, that if, without any actual fraud or moral turpitude, a man undertakes to make a voluntary conveyance of his land, the operation of which must necessarily deprive a third person of a just debt, this conveyance is fraudulent in the eye of the law, and void against creditors. It is highly proper that a man should be just before he is generous ; that he should pay his debts before he throws away his property.

In this case it is further to be remarked, that the defendant has been in possession nearly twenty-eight years ; the title under which both parties claim has been well known, at least to the plaintiff, and under such circumstances the title should be perfectly clear to shake such a possession.

An objection has been raised to the taking lands in execution on a judgment confessed by the executor, but in New Jersey lands are assets for the payment of debts.*

Verdict for defendant.

A motion had been made to set aside this verdict, and grant a new trial—1. Because of the misdirection of the court. 2. Because the verdict was against law and evidence.

The motion was argued at the last September term, by *I. H. Williamson* and *A. Ogden,* for the plaintiff ; and *M. Williamson* and *R. Stockton,* for the defendant.

*For the plaintiff.* The question was properly placed by the judge at *Nisi Prius,* upon the fact, whether the deed of January, 1761, from Little to Mrs. Lockyer and her child-

---

* This is altered by the act of 18th February, 1799, (*Pat. N. J. Laws* 372) and now no lands can be sold or affected by any judgment against executors or administrators.

ren was fraudulent and void? After a deed has been so long executed, and its validity remained so long unquestioned, the circumstances ought to be very strong and indisputable to authorize the presumption of fraud. It is not every voluntary deed that is considered as tainted, and, independent of that circumstance, little has been or can be urged against this instrument. In the case of *Cadogan* v. *Kennet, Cowp.* 432, Lord Mansfield went into a full investigation of the law upon this subject, and the liberal and wholesome doctrines which he established have since been universally acquiesced in. He expressly says, "the statute 27 *Elizabeth c.* 4, does not go to voluntary conveyances, merely as being voluntary, but to such as are fraudulent. A fair, voluntary conveyance may be good against creditors, notwithstanding its being voluntary."

Why was not this deed questioned at an earlier period, and in a legal manner; when all the circumstances were fresh, and the evidence, which a knowledge of the characters of the agents in the transaction furnishes, is strong and clear? The conveyance was properly executed and acknowledged, before a judge of the court, though it is now said to have been private and secret. John Lockyer, who now swears that he was ignorant of the circumstance, lived on the property nine or ten years; he called it his during the lifetime of the old man; he forbid the sheriff to sell under the execution in Halsted's suit. Respectable witnesses swear, that even during the lifetime of Little the land was considered as belonging to Phœbe Lockyer.

If these circumstances on the part of the plaintiff rebut the presumption of fraud, they are strengthened by the evidence which the defendant himself furnishes. The suit against Little was never brought during his life; it was not publicly tried; but judgment confessed by an executor; the ground of the action is now said to be a claim on a warranty deed; the judgment was suffered to lay dormant for nine years, and the property was never sold until Halsted had actually got into possession.

But the selling of this land upon a judgment by confession against an executor is erroneous. Lands are assets for the payment of debts, it is true, but they are not to be taken until the personal estate is exhausted. There is no pretence of there being any other claims upon the property; Little was esteemed a man in good circumstances, and, where the case rests so much upon presumption, it is fair to presume, that there was other property sufficient to answer this demand.

This inference is confirmed by the fact that the executor confessed judgment. If he confesses judgment or suffers it to go by default, he admits assets in his hands, and is estopped to say the contrary. *Rock* v. *Leighton, Salk.* 310; *Skelton* v. *Hawling,* 1 *Wils.* 258. (See also *Ewing* v. *Peters,* 3 *Term. Rep.* 685.) It cannot now be presumed, that an executor would confess judgment without having assets, and in his own hands, for he renders himself answerable for the debt. Although real estate, under our law, is assets, yet it is not assets in the hands of the executor, but it descends to the heir, though subject there to the debts of the ancestor. An executor would not commit himself by confessing judgment, when the assets were in the hands of another, of the value of which he must be ignorant: but if this can be presumed, it would be highly improper for him, by confessing judgment, to fix the debt upon the heir, without an opportunity being afforded him to rebut the claim.

In addition to these circumstances, a will of Robert Little, dated about fourteen days previous to the execution of this deed, was given in evidence, in which he makes precisely the same disposition of this piece of property, and directs his debts to be paid out of his personal estate.

The charge was also erroneous in another respect, it stated as a circumstance of weight, against the lessor of the plaintiff, that the defendant had been in possession for near twenty-eight years. This could not affect the lessor of the plaintiff, because his title had accrued within three or four

years, on the death of his mother, who was tenant for life; and it would be contrary to justice that the remainderman should be prejudiced by the omissions or negligences of the owner of the particular estate.

*For the defendant.* All the cases upon the statutes of Elizabeth shew that they are to be construed liberally, for the suppression of fraud: and under them the court would have been authorized, had they charged the jury, that the single circumstance of Little's being indebted at the time of making the deed, was not only a circumstance from which fraud might be inferred, but was actually fraudulent in the eye of the law.

This is the language of the law, confirmed by the opinions of the ablest English chancellors; and this would preclude any examination of the circumstances, which lead to the suspicion, not only of legal or technical, but of actual and moral fraud. If, however, there be any necessity for an inquiry, whether the conveyance from Little was executed under a premeditated and concerted plan, to defraud those who had claims upon his estate, it, at least, is not a matter of inquiry here. It was a question of fact, for the determination of the jury on the trial, distinctly submitted to their investigation and decision by the court, and their finding upon a question of fact, after evidence on both sides, is conclusive.

It has been contended, that the plea of *cognovit actionem* is an admission of assets in the hands of the executor, but not in the hands of the heir. The distinction is altogether novel. Assets in the hand of an executor, is a legal expression which never has been presumed, before this occasion, to imply that they must be in his manual grasp. The phrase is common, and its signification is plain; it means, merely, that there are assets belonging to the estate of the decedent, with which the judgment may be satisfied. So that they are bound by the judgment, it is perfectly imma-

terial where they may be located, or in whose immediate power they may be situated. If an executor should plead *plene administravit* at a time when there were real but no personal assets, can it admit of question how the jury ought to find upon this issue?

The dangers which are apprehended cannot be completely guarded against, except by making the heir a party to a suit, which can never be done; because there can be no doubt that on a judgment against an executor, real property may be taken in execution. It belongs to the other party to shew that this case is an exception.

An objection has been made to that part of the charge of the court, in which he considers the long possession by the plaintiff, as a circumstance of weight in his favor. Reference need only be had to the facts of the case, to shew that this objection is utterly frivolous. This possession was not said to constitute a legal title, otherwise the plaintiff would have been non-suited; but the jury were directed, that the claim ought to be perfectly clear to overturn such a possession. All the parties lived in the neighborhood, the defendant's title was a matter of public notoriety, founded upon public records, and upon transactions in the face of the world. The tenant for life was not a perfect stranger to the remainderman under the deed, but his own mother; interested both on his account and her own, to prosecute her claim to the land, if she had considered it as having any legal foundation. Though her acts may not be legally binding upon him, yet in the mind of every reasonable man, until some explanation is given, they must be considered as possessing some weight; and this was the amount of the direction of the court.

*In reply.* The counsel have argued, that under the statutes of Elizabeth, every voluntary conveyance is to be considered as fraudulent, which is made while the grantor is indebted. The opinion which Lord Mansfield entertained

upon this point, was however, somewhat different. He considers voluntary conveyances *eo nomine* as not objectionable. The fact, that the grantor was indebted, is a circumstance of fraud, but not conclusive, and it may always be rebutted by other evidence. If A. is worth £50,000 and indebted £5,000, should make a voluntary conveyance to his son on his marriage, of property to the amount of £10,000, would any court, professing to be guided by the rules of the common law, which Lord Mansfield considered as extending to every case embraced by the statutes in question, say that this deed was fraudulent and void? Upon the principle contended for, and in the broad extent to which it has been pushed in this argument, every voluntary conveyance would be invalid; because it would be impossible for any individual, mixing in the ordinary transactions of the world, to be perfectly free from debt, or to know that he was so. It is perfectly immaterial to what amount, whether a sixpence or a million.

It is impossible for any court of justice, or for any man who considers the law as "the perfection of reason," as a science, the foundations of which are the obvious and unalterable principles of common sense, seriously to utter a doctrine of so monstrous a nature. The true doctrine of the law, if indeed any one fact, without explanation, should necessarily taint every transaction in which it appears, with fraud, is not that whenever the grantor is indebted, but whenever he was insolvent, the conveyance must be taken to be invalid and dishonest.

There is in this case no evidence leading to the supposition, that the grantor was insolvent at the time he executed the conveyance in question. Such circumstances as can be collected after such a lapse of time, authorize a contrary inference. The deed corresponds in every important particular, with a will which he had previously made, and in which he directs his executor to pay all his debts out of his personal estate. The instrument was generally known of at the

time, and publicly acknowledged before an officer of character and station. The property was generally supposed to belong to the grantees. The grantor was considered, in the neighborhood, as a man of property. All these circumstances, which it is impossible to believe could have been fabricated, negative every presumption of either concealment or fraud.

If then, there was neither technical nor actual fraud, the title of the plaintiff was unexceptionable. The charge of the court on the point of possession was erroneous, and calculated to mislead the jury. It is impossible to ascertain upon what precise points they erred, but it is evident that their verdict was against the justice and equity of the case, which is the important point of inquiry in every application for a new trial.

The opinion of the court was delivered at this term by KINSEY, C. J. (After stating the circumstances of the case.)

On the trial of this cause at *Nisi Prius*, the court charged the jury, that the deed upon which the title of the lessor of the plaintiff rested was not fraudulent, from the single circumstance of its being voluntary; but that if the jury should believe that it was executed with a design to defraud honest creditors, or if its operation was to defeat fair claims which might exist against the estate, it was fraudulent.

2. That to authorize a recovery against a possession, of at least upwards of twenty years, the plaintiff ought to shew a clear title.

3. That the confession, by an executor, of a judgment by *cognovit actionem* was an admission of assets, whether real or personal, sufficient to satisfy the judgment.

With regard to the two latter questions, upon which considerable ingenuity has been displayed in the argument, I shall only observe, that in the case of *Wright* v. *Hartshorne*, decided in this court as early as 1756, it was settled on

demurrer, that real estate was assets in the hands of an administrator, for the payment of debts; this doctrine has been uniformly recognized and practiced under since.

The principal question, then, which remains to be considered, is, whether the deed from Little, to his daughter and grandchildren, was fraudulent and void, as against creditors under the statute of 13 Elizabeth, from the circumstance, that the grantor was indebted at the time of its execution? If this question be decided in the affirmative, the verdict in favor of the defendant must stand.

Fraud, under our law, is either express or a legal inference from circumstances. The true doctrine which is now recognized in our courts, so far as it bears upon the present question, may be gathered from two cases decided in the Court of Chancery, by Lord Hardwicke.

In the case of *Russel* v. *Hammond*, 1 *Atk.* 13, that enlightened judge holds the following explicit language, " there are many opinions, that every voluntary settlement is not fraudulent; what the judges mean, is, that a settlement being voluntary, is not for that reason fraudulent, but an evidence of fraud only. Though I have hardly known one case in which the person conveying, is indebted at the time of the conveyance, that has not been deemed fraudulent; there are, to be sure, cases of voluntary settlements that are not fraudulent, and those are, where the person making is not indebted at the time, in which case subsequent debts will not shake such settlement."

In *Townshend* v. *Windham*, (2 *Vesey.* 10, 11,) after a lapse of several years had allowed him time to examine and weigh his former determinations, and to measure with precision the doctrines which he had promulgated, he holds language of, if possible, a still more decided character. " There is *no case* where a person indebted, makes a voluntary conveyance of a real or chattel interest for benefit of a child, without the consideration of marriage or other valuable consideration, and dying indebted afterwards, that

that shall take place." "I know no case on the 13 Eliza-beth, where a man indebted at the time, makes a mere voluntary conveyance to a child without consideration, and dies indebted, but that it shall be considered as part of his estate for the benefit of his creditors." "A man actually indebted, and conveying voluntarily, always means to be in fraud of creditors, as I take it." (See *Den ex dem. Chews* v. *Sparks, ante, vol. I.* 56.) In *Twine's case, Rep.* 80, in which the leading doctrines upon this point are laid down, it is held, that natural affection is not a sufficient consideration to give validity to a grant as against credi-tors ; the consideration must be a valuable one.

These cases fully establish the point, that a conveyance may be legally fraudulent and void, though there is no dis-honesty in the mind of the grantor ; and although a deed is not deemed fraudulent, from the single circumstance of its being founded solely on consideration of natural affection, yet the principle, that a voluntary deed, made when the grantor is indebted, is invalid as against such creditors, is recognized by numerous authorities, sanctioned by the ablest judges, and questioned by none. This I consider as the settled law, and it is built upon this ground, that no man shall be permitted to create an estate in his own family, and among his own kindred, at the expense of his creditors.

The case of *Cadogan* v. *Kennet,* reported in *Cowper,* does not appear to me, when carefully examined, to controvert this doctrine. Lord Mansfield's language, when taken together, is not at variance with that of Lord Hardwicke, and if it was I should feel no inclination to give it the pre-ference. He says in that case, "the circumstances of a man being indebted at the time of his making a voluntary con-veyance, is an argument of fraud." Compare this language with that held by the same eminent judge in page 711 of the same book, in the case of *Doe* v. *Routledge,* where he

says, "one great circumstance, which should always be attended to in these transactions, is whether he was indebted at the time? If he was, it is a strong badge of fraud."

I agree with Lord Hardwicke to the full extent of his language, that to give away an estate without making provision for the payment of debts, is a fraud, which it is the duty of all courts to suppress: I will go further, and declare it to be my opinion, that whenever an attempt of this kind is made; whenever a creditor can discover property which has been conveyed under such circumstances, it is unreasonable to require of him, nor can he be called upon to make any examination or inquiry in order to ascertain whether other property has descended to the heir which might be sufficient to satisfy his claim. Such a deed is not only voidable, upon proof that there is no other, or not sufficient property, but it is absolutely void.

Viewing the case, therefore, in this light, I consider the charge of the court at the trial as even more favorable to the plaintiff than the law warranted, and therefore he has no right to complain. I should have felt myself constrained to have told the jury, that as the grantor conveyed the estate while a claim existed against it, and died without satisfying the demand, the deed was absolutely void; not that these were circumstances from which they might infer fraud.

I have omitted every observation upon the question of actual fraud. This rests altogether upon circumstances, which, whether they furnish conclusive or probable proof of a dishonest intention or not, depends so much upon the characters of the parties, and is so completely a question of fact for the decision of the jury, that I will not venture to intimate an opinion.

On the other grounds, however, I am of opinion that a new trial ought not to be granted.

Rule discharged.

Den v. De Hart.

NOTE.—Lord Thurlow in the case of *Stephens* v. *Olive,* 2 *Br. C. C.* 90, recognized the doctrine of Lord Hardwicke, and it has since been confirmed in *Glaister* v. *Hewer,* 8 *Ves. jun.* 99. *Kidney* v. *Coussmaker,* 12 *Ves. jun.* 136. Some of the difficulties in the way have been removed by the judicious restrictions stated in *Lush* v. *Wilkinson,* 5 *Ves. jun.* 384, where it is said that it is not sufficient that the grantor is indebted at the time of the conveyance; a single or an inconsiderable debt is not enough; every man must be indebted for the common bills of his house, though he pays them every week. It must depend upon this, whether he was in insolvent circumstances at the time. If, however, the limitations introduced by this case are necessary and equitable, so is the extension which has been given to it in another direction, in the case of *Montague* v. *Lord Sandwich,* cited 12 *Ves. jun.* 148. 156, *note,* in which it was held that if the conveyance is void against creditors whose claims existed at the time of the grant, and has been set aside as to them, subsequent creditors are let in. 1 *Schoale & Lefroy* 156. See *Osborne* v. *Moss,* 7 *John.* 161.*

With regard to another question which was argued by the counsel, though not expressly noticed by the court, *viz* : whether a confession of judgment by an executor is conclusive against the heir of the real estate, it is one which can derive little illustration from English cases. In the case of *Mason's devisees* v. *Peters' administrators,* 1 *Munf.* 437, in the state of Virginia, it was held that a judgment against the executors only, is no proof against the devisees of land; for there is no privity between an executor and the heir or devisee of land, however it may be between an executor and a legatee of personals. On this last point, *Anderson* v. *Fox,* 2 *Hen. & Munf.* 245; *Atwell's administrators* v. *Milton,* 4 *Hen. & Munf.* 253.

* See 2 *John. Ch.* 48. 2 *Ib.* 500, 501. *Wharton's Dig.* 291. *Lessee of Ridgeway* v. *Underwood.*

That· the claim on the estate was, in this case, for unliquidated damages, furnished no ground of objection to applying the statute of Elizabeth, which has been held to extend not only to the creditors, but to all others who· have. any cause of action or suit, or any penalty or forfeiture, either to the king or subject.   *Gil. Eq.* 29.